IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Donna Gardner, individually and as Personal Representative of the Estate of Lewis C. Gardner,<br><br>    Plaintiff,<br><br>vs.<br><br>United States of America,<br><br>    Defendant. | C/A No. 3:13-cv-00063-JFA<br><br><br><br><br>**ORDER GRANTING MOTION TO ENFORCE SETTLEMENT** |

Plaintiff Donna Gardner filed the above-captioned suit in this court on January 4, 2013 against Defendant United States of America, bringing claims for wrongful death and survivorship based on the death of her father, Lewis C. Gardner, at the William Jennings Bryan Dorn VA Medical Center. The parties engaged in early mediation, and on March 26, 2013 they informed this court that the case had been completely resolved. *See* ECF No. 13. Arguing that she did not agree with the settlement, however, on March 28, 2013 Plaintiff moved pro se to have her attorneys in this matter, Robert G. Rikard, Esq. and Thomas Micah Leddy, Esq., removed as counsel of record. *See* ECF No. 15. In this motion, Plaintiff states that her attorneys did not keep her informed of important developments in a timely manner and, despite "numerous" requests, they did not provide her any court documents concerning her case. She also avers that she was not informed about the purpose of the mediation prior to it occurring. Also on March 28, 2013, Defendant filed a motion to enforce the settlement agreement the parties reached at mediation and which Plaintiff signed. *See* ECF No. 16.

The court held a hearing on these motions on April 10, 2013. At the hearing, the court granted Plaintiff's motion to relieve Attorneys Rikard and Leddy from the case. Regarding the

issue of settlement, Plaintiff did not deny that she signed the settlement agreement. Instead, she again argued that her attorneys failed to inform her about the purpose of mediation, the applicable law, and the developments in her case. She also related that she became upset during the mediation, that she thought it was unethically conducted, and that she felt pressured to enter into the settlement agreement.

Her former attorneys provided evidence to the contrary. They testified that they exhaustively discussed the applicable law with Plaintiff as her case progressed, providing by way of example a detailed email to her discussing the requirements for exhaustion of administrative remedies under the Federal Tort Claims Act (FTCA).[1] Also, they testified that they provided her with all documents regarding her case. In this regard, they provided for in camera review a letter from the Defendant they forwarded to Plaintiff which discussed an early settlement offer. They also provided for this court's review an email to Plaintiff dated three days after the instant action was filed, and this email indicates that it included as attachments the Complaint, all of its exhibits, and Plaintiff's answers to Local Rule 26.01 interrogatories. Plaintiff's former counsel testified that Plaintiff was informed of their preliminary discussions with Defendant regarding the propriety of mediation. Further, Plaintiff's former counsel testified that Plaintiff met with Attorney Leddy at his office three days prior to the mediation for "over an hour" to discuss what was going to happen at the mediation. Apparently, at this meeting Plaintiff provided her former counsel with photographs and video of her father so that they could prepare a mediation statement, which they subsequently shared with Plaintiff. Further, the court heard evidence that Plaintiff was a "willing" and "engaged" participant in the mediation. According to her former attorneys, during the mediation Plaintiff discussed each offer and counteroffer in detail, she

---

[1] The documents Plaintiff's former counsel provided the court have been filed under seal, as they are still subject to

stated that she "wanted to settle the case that day," and actually hugged Attorney Leddy at the conclusion of the mediation.

In addition to hearing in detail about the parties' mediation, the court heard that Defendant settled this case for the *maximum amount* Plaintiff could have received had she proceeded to trial.[2] The court explained this to Plaintiff, along with the difficulty of having a settlement set aside, once reached. Plaintiff indicated that she understood these issues, but she maintained that she would like the opportunity to find a new attorney to represent her and attempt to have the settlement set aside. As a final matter, the court discussed with Plaintiff the fee agreement Plaintiff and her former attorneys entered into. *See* ECF No. 21-2. When asked whether there is any reason that the attorney's fees she agreed to should not be paid, Plaintiff only replied that her former counsel "misrepresented [her] by . . . not keeping her informed" and by "not giving [her] a copy of [her] bills when [she] asked for it [sic]."

At the conclusion of the hearing, this court granted Plaintiff's request for an extension of time during which she could seek new counsel, stating that it would defer ruling on Defendant's motion to enforce the settlement until after May 1, 2013. On April 30, 2013, Plaintiff informed the court that she had been unsuccessful in locating a new attorney. *See* ECF No. 31. Her deadline for doing so is now long passed. Thus, this matter is before the court on the renewed motion of Defendant United States of America to enforce a settlement reached between the parties in this case. *See* ECF No. 35.

In determining whether to enforce the settlement agreement in this case, the court applies the standard set forth in *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535 (4th Cir. 2002). There, the

---

the attorney–client privilege.

[2] Although the court expresses no opinion on this matter, it was informed that the state law "cap" on damages in medical malpractice cases which is applicable under the FTCA, absent gross negligence, would be $418,000.00 in this case. This is the amount for which the parties settled the case.

Fourth Circuit explained that "district courts have inherent authority, deriving from their equity power, to enforce settlement agreements." *Id.* at 540. However, "to exercise its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions." *Id.* at 540–41 (citing *Moore v. Beaufort County*, 936 F.2d 159, 162 (4th Cir. 1991); *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983)). Accordingly, "if an agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for nonperformance of the agreement is 'comparatively insubstantial.'" *Id.* at 540 (quoting *Millner v. Norfolk & W. Ry. Co.*, 643 F.2d 1005, 1009 (4th Cir. 1981)). In this regard, "having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement." *Id.* (quoting *Young v. FDIC*, 103 F.3d 1180, 1195 (4th Cir. 1997)) (internal quotation marks omitted). Also, "the fact that the agreement is not in writing does not render it unenforceable." *Id.* (citing *Alexander v. Indus. of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir. 1990)). However, "[i]f there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement *summarily*," and it must instead conduct a hearing in order to resolve that dispute and make factual findings. *Id.* at 541 (quoting *Ozyagcilar*, 701 F.2d at 308 n.*; *Millner*, 643 F.2d at 1009).

Here, Plaintiff does not dispute that she signed a settlement agreement. *See* ECF No. 16-2; ECF No. 38 at 2. Instead, Plaintiff argues that the court should set this agreement aside. As noted above, the court held a hearing on this matter and heard from all of the parties regarding the circumstances surrounding the settlement agreement. As discussed in more detail below,

after considering the testimony and arguments from the hearing, the parties' briefs, and the record in this case, the court determines that it should enforce the settlement agreement.

First, the court finds that the parties reached a complete agreement in this case. The written agreement has been filed with the court, and its terms are as follows. The parties agreed that "Defendant shall pay to Plaintiff and her attorney the sum of $418,000.00 as soon as practicable, but no later than 60 days." ECF No. 16-2. Regarding attorney's fees, according to the fee agreement she signed, Plaintiff agreed to pay her counsel 25% of the settlement amount[3] and costs. *See* ECF No. 21-2. Thus, the court finds that the parties intended for Defendant to pay that amount to Plaintiff's former counsel. The parties also agreed that "Plaintiff will execute a release releasing the Defendant from all claims and damages." *Id.* Further, "[a]ll parties authorize their respective attorneys to execute a dismissal with prejudice." *Id.* And finally, "[t]here are no medical liens." *Id.* This agreement, which is dated March 21, 2013, is signed by Plaintiff, her counsel, and counsel for Defendant.

Following the hearing, Plaintiff filed several letters with this court. One letter raises an issue regarding the scope of the settlement the parties reached, suggesting that it only disposed of her survival claim and did not dispose of her wrongful death claim. *See* ECF No. 31. For example, Plaintiff states her belief that the requisite Form 95 for a wrongful death claim had been filed on April 8, 2013, *after* the mediation in this case occurred. Thus, she suggests that if the Form 95 had not been filed at the time of mediation, the parties could not have mediated and settled it. She then requests the court allow her to pursue the wrongful death claim pro se. Another letter she filed essentially reiterates her previous arguments, described above, but

---

[3] This is the maximum amount allowed under the FTCA for claims settled after litigation has commenced. 28 U.S.C. § 2678.

provides more detail regarding her allegation that she was not aware that she was settling both the wrongful death and survival actions. *See* ECF No. 38.

Regarding the scope of the agreement, the court finds that the parties intended to settle all of Plaintiff's claims, not just her survival claim, and the court declines Plaintiff's request to pursue her wrongful death claim pro se. After her father died on May 29, 2012, Plaintiff signed the relevant Form 95 on July 25, 2012. *See* ECF No. 21-4 at 2; ECF No. 31 at 2. Her attorneys served the Form 95 on the United States the following day. *See* ECF No. 21-4 at 1. Indeed, presenting the claim to the appropriate federal agency and having it finally denied is a prerequisite to filing suit under the FTCA. *See* 28 U.S.C. § 2675. Here, the United States finally denied the claim on October 9, 2012, ECF No. 1-3, and Plaintiff commenced this suit on January 4, 2013. Notably, the letter from the United States specifically refers to the separate damages Plaintiff sought in her personal injury and wrongful death claims. *Id.* Thus, it is clearly not correct that the Form 95 for wrongful death was filed after the mediation in this case or that the parties did not mediate Plaintiff's wrongful death claim.[4]

Finally, the court finds that Plaintiff has not provided a sufficient excuse for failing to comply with the settlement agreement she signed. To be clear, this court is sympathetic to Plaintiff for the loss of her father and can appreciate that participating in the mediation of a settlement of one's claims can be emotionally trying, particularly where the claims relate to the death of a loved one. Based on the testimony received at the hearing and the record in this case, however, the court does not credit Plaintiff's testimony that she was not informed about her case and did not understand the mediation or settlement agreement. Likewise, the court does not

---

[4] Plaintiff's confusion about the April 8, 2013 filing date may have resulted from the fact that a *copy* of the July 25, 2012 Form 95 was filed with this court on April 8, 2013. *See* ECF No. 21-4. That a Form 95 is filed with this court, however, is irrelevant to whether the wrongful death claim was properly presented under the FTCA.

credit Plaintiff's testimony that she was pressured to enter into the agreement. Rather, it appears that Plaintiff is merely having second thoughts about the settlement she reached.

In this regard, Plaintiff's post-hearing letters to this court evidence Plaintiff's apparent belief that she could have received more than the amount to which she agreed. In her letter dated April 30, 2013, she advances several legal arguments which she alleges support her position.[5] In her letter dated June 28, 2013, Plaintiff argues that she understood the $418,000 settlement amount to be the maximum she could have received for her survival claim, but not her wrongful death claim. These letters show that Plaintiff is having misgivings about the amount for which she settled her claims, not that she was pressured into settlement. Still, even if Plaintiff is correct that she could have received a greater amount, this does not justify setting aside the agreement. *See Hensley*, 277 F.3d at 540. Importantly, absent her own conclusory testimony, which is contradicted by the testimony of her former counsel and of Defendant, Plaintiff has provided no evidence that the settlement agreement she signed is invalid.

Accordingly, the court directs the parties to comply with the settlement agreement signed on March 21, 2013. Specifically, the court hereby orders Plaintiff to execute a release releasing Defendant from all claims and damages, and the court orders Defendant to pay to Plaintiff and her former attorneys the sum of $418,000.00. In particular, under Plaintiff's agreement with her former counsel, her former counsel are entitled to 25% of the settlement amount, or $104,500, plus costs, which in this case amount to $3,228.35, for a total of $107,728.35. *See* ECF No. 21 at 5. The court hereby approves of these attorneys' fees and costs. Plaintiff is entitled to the remainder, or $310,271.65. The parties are hereby directed to take any measures necessary to

---

[5] For example, in her letter dated April 30, 2013, Plaintiff cites the doctrine set forth in *Feres v. United States*, 340 U.S. 135 (1950), which relates to injuries to servicemen arising out of or in the course of activity *incident to service*. *Feres* has no applicability to this case, which involves the death of a *retired* veteran. Additionally, Plaintiff suggests that the United States may be liable for punitive damages under the FTCA, which is clearly incorrect. *See*

cause Defendant to disburse the settlement proceeds no more than 60 days following the date of this order. Finally, Plaintiff and Defendant shall execute and cause to be filed with the court a dismissal with prejudice.

Based on the above, Defendant's motion to enforce the settlement agreement is GRANTED. The Clerk is instructed to close this case.

IT IS SO ORDERED.

July 9, 2013  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

28 U.S.C. § 2674 ("The United States . . . shall not be liable for . . . punitive damages.").